**Christopher P. Lenzo**
**LENZO & REIS, LLC**
360 Mt. Kemble Ave., Suite 1004
Morristown, NJ 07960
973-845-9922 (Phone)
973-845-9933 (Fax)
clenzo@newjerseyemploymentattorneys.com (E-mail)
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ATA MOVASSAGHI, | : | Civil Action No. |
| | : | |
| | : | The Honorable _____, U.S.D.J. |
| *Plaintiff*, | : | The Honorable _____, U.S.M.J. |
| | : | |
| v. | : | **COMPLAINT AND JURY** |
| | : | **DEMAND** |
| ROC NATION LLC, | : | |
| | : | |
| *Defendant*. | : | |
| | : | |

Plaintiff Ata Movassaghi says the following by way of Complaint against defendant:

**THE PARTIES**

1. Plaintiff Ata Movassaghi ("plaintiff" or " Mr. Movassaghi") is a resident of the State of New York. At all times relevant to this Complaint, plaintiff was employed by defendant Roc Nation LLC as Director of Digistal Marketing and Strategy for defendant's Sports Division working out of defendant's Manhattan office.

2. Defendant Roc Nation LLC ("defendant") is a limited liability company headquartered in Beverly Hills, California. At all times relevant to this Complaint, defendant employed Mr. Movassaghi at its office located at 540 West 26th Street in the City, County, and State of New York.

## JURISDICTION AND VENUE

3. This Court has federal subject matter jurisdiction over this matter, as it is brought in part under the federal Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.

4. The Court has personal jurisdiction over defendant because defendant maintains corporate offices within the Southern District of New York.

5. This Court is a proper venue because plaintiff was employed within the Southern District of New York, and all claims herein arise out of the termination of that employment.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff timely dual-filed a Charge of Discrimination with the New York State Division of Human Rights and the United States Equal Employment Opportunity Commission ("EEOC") on October 14, 2021, which was 231 days after defendants terminated his employment on February 25, 2021.

7. The EEOC sent a Notice of Right to Sue to plaintiff by regular mail with a postmark of October 24, 2021. Plaintiff received that correspondence on October 27, 2021.

8. Plaintiff timely filed this lawsuit within 90 days of receiving the Notice of Right to Sue as required by the ADA.

## FACTUAL ALLEGATIONS

9. Ata Movassaghi began working for defendant on or about October 1, 2018.

10. Mr. Movassaghi always performed his job well. That is evidenced by the following:

   a. Defendant gave Mr. Movassaghi a $30,000 raise in or about February 2020;

    b. .Division President Juan Perez referred to Mr. Movassaghi as one of defendant's best hires in recent years;

    c. Chief Digital Officer David Wander (who was Mr. Movassaghi's immediate supervisor) consistently praised Mr. Movassaghi's job performance both in person with other employees present and by text message and e-mail;

    d. The only employee that defendant retained on its Sports Digital Marketing Team after pandemic-related furloughs was Mr. Movassaghi; and

    e. No client, supervisor, or co-worker ever criticized Mr. Movassaghi's performance in any material way.

11. In or about June 2020, Mr. Movassaghi's father was diagnosed with a severe heart condition and cancer, requiring him to be hospitalized for an extended period of time.

12. Mr. Movassaghi informed defendant's Chief Executive Officer Desiree Perez of his father's condition.

13. Ms. Perez granted Mr. Movassaghi's request to continue to work from home for the remainder of the summer while defendant's other New York employees returned to the office.

14. Around the week of September 8, 2020, Mr. Movassaghi asked Mr. Wander if he could continue to work from home because his father remained hospitalized and in critical condition. Mr. Movassaghi explained that being forced to return to the office in the highly infected New York City would present a serious risk of him contracting COVID-19 and passing it to his very vulnerable father. Mr. Wander approved Mr. Movassaghi working from home subject to approval from his superiors. Mr. Movassaghi then contacted Mr. Perez, who approved Mr. Movassaghi working from home subject to approval from Ms. Perez. Consequently, Mr.

Movassaghi contacted Ms. Perez's assistants and set up a call with Ms. Perez, However, before that call with Ms. Perez occurred, Human Resources Representative Andrea Zambrano called Mr. Movassaghi and told him that Ms. Perez had issued an ultimatum to Mr. Movassaghi: return to the office or take family leave pursuant to the federal FMLA.  Mr. Movassaghi then called Mr. Perez and informed him of what Ms. Zambrano had said.  Mr. Perez said he would follow up with Ms. Perez, who is his wife.  Thereafter, on or about September 11, 2020, Mr. Wander called Mr. Movassaghi and notified Mr. Movassaghi that Ms. Perez's decision stood.  On or about September 14, 2020, Mr. Movassaghi spoke with Ms. Zambrano and Mr. Wander to confirm that he would be taking FMLA leave.  Defendant immediately terminated Mr. Movassaghi's access to his work e-mail address.

15. Defendant's refusal to allow Mr. Movassaghi to continue to work from home disregarded the facts that (a) other employees had always worked remotely, even before the pandemic, and (b) Mr. Movassaghi had effectively performed his job duties remotely from approximately March 16, 2020 until he began his family leave of absence on or about September 14, 2020.

16. A substantial portion of Mr. Movassaghi's leave was unpaid because New York's Paid Family Leave Law only afforded him a small portion of his salary and defendant only allowed Mr. Movassaghi to use his sick time, even though Mr. Movassaghi had accrued unused paid vacation time.

17. On or about December 7, 2020, Mr. Movassaghi returned to work from his FMLA leave.

18. Almost immediately, Mr. Wander sent Mr. Movassaghi the resumes of two candidates to whom Mr. Wander had effectively offered jobs working for Mr. Movassaghi while Mr. Movassaghi was on FMLA leave.

19. On or about January 4, 2021, Mr. Movassaghi returned to the office following defendant's holiday break and the two new employees began work.

20. Demonstrating that defendant viewed Mr. Movassaghi as one of its best employees, defendant assigned Mr. Movassaghi to represent it at the Super Bowl as one of fewer than ten company employees there. One of defendant's marquee sports clients, Leonard Fournette, was playing. Mr. Movassaghi assisted with the production of all of the musical performances at the Super Bowl pursuant to defendant's consulting partnership with the National Football League.

21. However, shortly thereafter, on or about February 23, 2021, Mr. Wander excluded Mr. Movassaghi from a client engagement in Florida, even though the Head of defendant's Football Division Kim Miale had told Mr. Wander that the client had specifically requested Mr. Movassaghi. Instead of Mr. Movassaghi, Mr. Wander sent one of his new hires to the engagement. Mr. Wander justified his decision by referring to the "health sensitivities" of Mr. Movassaghi's father.

22. Just two days later, on or about February 25, 2021, Human Resources Vice President Nicole Holland communicated to Mr. Movassaghi that defendant had effectively terminated his employment by indefinitely "furloughing" him, ostensibly as a result of a "restructuring". However, defendant did not "furlough" or let go any other employee as part of this supposed "restructuring". Moreover, it is clear that defendant did not eliminate Mr. Movassaghi's job, as defendant began actively using Redstone Partners, LLC to recruit a new hire

to perform the same job duties that Mr. Movassaghi performed only eight days after Mr. Movassaghi was "furloughed".

## FIRST COUNT

### ASSOCIATIONAL DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

23.     Plaintiff repeats all of the foregoing allegations as if fully set forth herein.

24.     Defendant violated the federal ADA, 42 U.S.C. § 12101 et seq., by discriminating against plaintiff on the basis of his association with a person with a disability.

25.     As a result of defendant's unlawful conduct, plaintiff has suffered and continues to suffer economic losses, emotional distress, harm to career, harm to reputation, and other such damages compensable under the ADA.

WHEREFORE, plaintiff demands judgment against defendant for the following:

        a.     Compensatory damages;

        b.     Consequential damages;

        c.     Punitive damages;

        d.     Attorneys' fees;

        e.     Costs of suit;

        f.     Pre-judgment and post-judgment interest; and

        g.     Such other relief as the Court may deem equitable and just.

## SECOND COUNT

### FAMILY LEAVE RETALIATION IN VIOLATION OF THE FEDERAL FAMILY AND MEDICAL LEAVE ACT

26.     Plaintiff repeats all of the foregoing allegations as if fully set forth herein.

27. Defendant willfully violated the federal FMLA, 29 U.S.C. §2601 et seq., by retaliating against plaintiff for taking a protected family leave of absence.

28. As a result of defendant's unlawful conduct, plaintiff has suffered and continues to suffer economic losses and other such damages compensable under the FMLA.

WHEREFORE, plaintiff demands judgment against defendant for the following:

    h. Compensatory damages;

    i. Consequential damages;

    j. Liquidated damages;

    k. Attorneys' fees;

    l. Costs of suit;

    m. Pre-judgment and post-judgment interest; and

    n. Such other relief as the Court may deem equitable and just.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues subject to trial by jury.

                              **LENZO & REIS, LLC**
                              *Attorneys for Plaintiff*

                        By: */s/ Christopher P. Lenzo*
                              **CHRISTOPHER P. LENZO**

Dated: January 20, 2023